UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERRY HICKS,<br><br>              Plaintiff,<br><br>-against-<br><br>COLLECTORS UNIVERSE, INC., JOSEPH J. ORLANDO, A.J. MOYER, BRUCE A. STEVENS, KATE W. DUCHENE, VINA M. LEITE, JON M. SULLIVAN, LORRAINE G. BARDEEN, and JENNIFER H. LEUER,<br><br>              Defendants. | Case No.: _____<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Terry Hicks ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Collectors Universe, Inc. ("Collectors" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Collectors, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and SEC Rule 14d-9, 17 C.F.R. §240.14d-9 ("Rule 14d-9").  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by a Cards Acquisition Inc., a Delaware corporation ("Purchaser") and an indirect wholly owned subsidiary of Cards Parent LP,

1

a Delaware limited partnership ("Parent") to acquire all the issued and outstanding shares of Collectors (the "Proposed Transaction").

2. On November 30, 2020, Collectors entered into an agreement and plan of merger, (the "Merger Agreement"), whereby shareholders of Collectors common stock will receive $75.25 for each share of Collectors common stock they own (the "Offer Price").

3. Parent intends to fund the aggregate Offer Price and the aggregate consideration payable upon the consummation of the Proposed Transaction with a combination of the proceeds of committed equity financing provided by D1 Capital Partners Master LP and its affiliates ("D1") and CPV Investments VI, LLC ("CPV" along with D1 referred to as the "Investor Group Entities"). Parent is indirectly controlled by Nathaniel Turner ("Turner"), Daniel Sundheim ("Sundheim") and Steven A. Cohen ("Cohen" together with Turner and Sundheim referred to as the "Investor Group").

4. On December 17, 2020, to convince Collectors' shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the Company's financial projections; (ii) the fairness opinion and financial analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan"); and (iii) the background of the merger.

5. The Tender Offer is scheduled to expire on January 19, 2021 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

6. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Collectors' shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. At 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act and 28

U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Collectors' common stock trades on the Nasdaq stock exchange, which is headquartered in this District, and the Company hired financial and legal advisors for the purposes of the Proposed Transaction, which are also located in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Collectors common stock.

12. Defendant Collectors is incorporated in Delaware and maintains its principal executive offices at 1610 E. Saint Andrew Place, Santa Ana, CA 92705. The Company's common stock trades on the NASDAQ under the ticker symbol "CLCT."

13. Individual Defendant Joseph J. Orlando is, and at all relevant times has been, the Chief Executive Officer and President for the Company.

14. Individual Defendant A.J. Moyer is, and at all relevant times has been, the Chairman of the Board for the Company.

15. Individual Defendant Bruce A. Stevens is, and at all relevant times has been, a director of the Company.

16. Individual Defendant Kate W. Duchene is, and at all relevant times has been, a director of the Company.

17. Individual Defendant Vina M. Leite is, and at all relevant times has been, a director of the Company.

18. Individual Defendant Jon M. Sullivan is, and at all relevant times has been, a

director of the Company.

19. Individual Defendant Lorraine G. Bardeen is, and at all relevant times has been, a director of the Company.

20. Individual Defendant Jennifer H. Leuer is, and at all relevant times has been, a director of the Company.

21. The defendants referred to in ¶¶ 13-20 are collectively referred to herein as the "Individual Defendants" or the "Board", and together with Collectors as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Proposed Transaction**

22. Collectors is a leading provider of value-added services to the collectibles markets. The Company authenticates and grades collectible coins, trading cards, event tickets, autographs and memorabilia. The Company also compiles and publishes authoritative information about United States and world coins, collectible trading cards and sports memorabilia and operates its CCE dealer-to-dealer Internet bid-ask market for certified coins and its Expos trade show and conventions business.

23. Purchaser and Parent were formed for the purpose of effectuating the Proposed Transaction. The Investor Group consists of D1 and CPV. D1 is a global investment firm that operates across public and private markets. Founded in 2018 by Dan Sundheim, D1 focuses on investing in the global internet, technology, telecom, media, consumer, healthcare, financial, industrial, and real estate sectors. CPV invests long-term capital, primarily in direct private investments and other opportunistic transactions, and manages family office activities, on behalf of Steven A. Cohen and his family.

24. On November 30, 2020, Collectors and Purchaser issued a press release announcing

the Proposed Transaction, which states in relevant part:

### Collectors Universe to be Acquired by Investor Group Led by Entrepreneur and Collector Nat Turner for Approximately $700 Million

NEWPORT BEACH, Calif., Nov. 30, 2020 (GLOBE NEWSWIRE) -- Collectors Universe, Inc. (NASDAQ: CLCT) ("Collectors Universe" or the "Company"), a leading provider of value-added authentication and grading services to dealers and collectors of collectibles, today announced that it has entered into a definitive agreement under which an investor group led by entrepreneur and sports card collector Nat Turner, D1 Capital Partners L.P., and Cohen Private Ventures, LLC (the "Investor Group") will acquire all of the Company's outstanding shares of common stock for $75.25 per share in cash.

The transaction represents a premium of approximately 30% over the Company's 60-day volume-weighted average price ended on November 25, 2020, the last full trading day before today's announcement. The transaction, which was approved by the Collectors Universe Board of Directors, represents fully diluted equity value of approximately $700 million, and is not subject to any financing contingency.

Joseph J. Orlando, President and CEO of Collectors Universe, will continue to lead Collectors Universe, which will retain its headquarters in Santa Ana, California.

"After careful consideration, we are pleased to have reached an agreement that reflects the remarkable value creation Collectors Universe has achieved through its consistent execution during these challenging times," said A.J. "Bert" Moyer, Chairman of the Collectors Universe Board of Directors. "This transaction will deliver an immediate cash premium to our shareholders, and create exciting opportunities for our employees, collectors and dealers around the world."

"Collectors Universe has firmly established itself as an industry leader, with the strongest and best-known brands in authentication and grading services," said Mr. Orlando. "As we look to our next chapter, I'm excited to partner with Nat, a fellow lifelong collector and hobbyist whose passion for the collectibles space and substantial experience scaling technology businesses will help position Collectors Universe to drive continued growth and success in our PSA and PCGS brands over the long-term. This transaction is a testament to the value that all of Collectors Universe's talented employees have built. As we transition from a public to a private company, in partnership with Nat and a group of world-class financial investors and sports and collectibles enthusiasts, our customers will continue to see the same level of integrity, transparency, service and high-quality solutions that they expect from Collectors Universe."

"Collecting sports cards and connecting with like-minded hobbyists has been a lifelong passion," said Mr. Turner. "I have tremendous respect for the high-quality services Collectors Universe provides and the leadership position its talented team,

led by Joe Orlando, has built. We are committed to bringing the resources and expertise necessary to expand the Company's operational capacity and technological capabilities, while enhancing the accuracy and consistency for which Collectors Universe is known."

**Transaction Details**

The transaction will be completed through a cash tender offer for all of the outstanding common shares of Collectors Universe for $75.25 per share in cash, to be commenced as promptly as reasonably practicable, followed by a merger in which any remaining outstanding shares of Collectors Universe will be converted into the right to receive the same cash price per share paid in the tender offer. The closing of the tender offer is subject to certain limited and customary conditions, including the tender by Collectors Universe shareholders of at least one share more than 50% of Collectors Universe's issued and outstanding shares and expiration or early termination of the statutory waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

The Collectors Universe Board of Directors recommends that all shareholders tender their shares in the offer.

The transaction is expected to close in the first calendar quarter of 2021. Upon completion of the transaction, Collectors Universe will become a privately held company and its shares will no longer be listed on any public market.

**Advisors**

Houlihan Lokey is serving as financial advisor to the Company and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel.

Allen & Company LLC is serving as financial advisor to the Investor Group and Sullivan & Cromwell LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP are serving as legal counsel.

25. The Tender Offer comes in the midst of the COVID-19 pandemic ("Pandemic"), at a time when stocks throughout the world are subject to great uncertainty and radical change. The Offer Price does not compensate stockholders for the intrinsic value of their shares. And so, piggybacking off the Pandemic and failing to provide stockholders with a reasonable premium, the Tender Offer will provide a substantial discount to Purchaser, at the expense of the common stockholders who will not see the intrinsic value of their shares realized nor be able to partake in

the continued growth of the Company. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for stockholders to properly determine whether to tender their shares.

**B.     The Misleading Recommendation Statement Omits Material Information**

26.     On December 17, 2020, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC. The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents or omits material information that is necessary for Collectors shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9 and in breach of the Individual Defendants' duty of candor/disclosure.

27.     *First*, the Recommendation Statement omits critical financial projections, including Collectors' net income projections (the "Net Income Projections"). Net Income is often considered one the most comparable metrics to metrics utilizing Generally Accepted Accounting Principles ("GAAP"). The inclusion of Net Income is therefore necessary for Collectors stockholders to ensure that the Offer Price is premised on projections that were reasonably prepared. The failure to disclose the Net Income also obfuscates the financial picture of both companies and provides a misleadingly incomplete representation of the projections tables and valuation analyses summarized in the Recommendation Statement. As Regulation S-K of the SEC explains, when disclosing revenue, it should be disclosed together with net income to prevent a misleading representation of corporate value:

> Although traditionally projections have been given for three financial items generally considered to be of primary importance to investors (revenues, net income (loss) and earnings (loss) per share), projection information need not necessarily be limited to these three items. However, management should take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items. Revenues, net income (loss) and earnings (loss) per share usually are presented together in order to avoid any misleading inferences that may arise when the individual items reflect contradictory trends.

17 C.F.R. § 229.10(b)(1). Here, the projections disclosed revenue but omitted net income

28. Unlike poker where a player must conceal his unexposed cards, the object of a recommendation statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, this omission renders the projections included in the Recommendation Statement misleadingly incomplete.

29. *Second*, the Recommendation Statement describes Houlihan's fairness opinion and valuation analyses performed in support of its opinion yet omits critical information. Defendants concede the materiality of this information in citing Houlihan's fairness opinion and its valuation analyses among the reasons for recommending the merger to Collectors shareholders. However, the summaries of Houlihan's fairness opinion and analyses provided in the Recommendation Statement fail to include key inputs and assumptions. Without this information, as described below, Collectors' shareholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on Houlihan's fairness opinion in deciding whether to

tender their shares in the Tender Offer. The following omitted information, if disclosed, would significantly alter the total mix of information available to Collectors' shareholders.

30. With respect to Houlihan's *Selected Companies Analysis*, Defendants must disclose the inputs and assumptions of the individual companies and transactions observed by Houlihan.

31. With respect to Houlihan's *Selected Transactions Analysis*, Defendants must disclose the metrics observed, the individuals premiums paid, and the LTM Adjusted Ebitda for each of the transactions observed.

32. In summarizing Houlihan's *Discounted Cash Flow Analysis* ("DCF"), the Recommendation Statement fails to disclose: (i) the terminal values for each of the selected public companies observed as utilized in the analysis; (ii) the individual Adjusted EBITDA multiples for each of the selected public companies observed; (iii) the assumptions behind selecting a discount rate of 9.0% to 11.0%; (iv) Collector's WACC; (v) the Company's total debt, cash and cash equivalents; and (vi) any other inputs and assumption used to derive the implied per share equity value reference range.

33. These key inputs are material to Collectors shareholders, and their omission renders the summary of Houlihan's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles explaining the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions: in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the

> discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78 (emphasis added). Without the above, material information, Collectors shareholders cannot evaluate for themselves the reliability of Houlihan's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value per share range reflects the true value of the Company or was the result of Houlihan's unreasonable judgment, and make an informed decision regarding whether to tender their shares.

34.  *Third*, the Recommendation Statement fails to disclose information concerning the background of the merger. Specifically, it fails include details of the settlement agreement with Alta Fox Capital Management, LLC and fails to disclose the conflict of interest and with which party that caused Deborah A. Farrington to recuse herself. A reasonable shareholder would want to know the motivations of the Board in the sales process, as it could directly impact the fairness of the merger. Accordingly, it is necessary for stockholders to be fully aware of what factors might influence a Board's, so that stockholders may determine how much, if any, reliance to place on their recommendation of fairness when making an informed decision regarding a merger transaction. Accordingly, the failure to disclose this background information represents a violation of federal securities laws and breach of fiduciary duties fully and fairly.

35.  In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in

contravention of the Exchange Act and in breach of the duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and other Collectors shareholders will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

36. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

37. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

38. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

40. In doing so, Defendants made untrue statements and/or omitted material facts

necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

42. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

43. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT II
**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

44. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

45. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

46. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

47. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

48. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

49. The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9 if other SEC regulations specifically require disclosure of the

omitted information.

50. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, that render the Recommendation Statement misleadingly incomplete. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

51. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of the right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

**COUNT III**
**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Collectors within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Collectors, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are

materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing the Recommendation Statement.

56. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT IV
### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

62. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to be disseminated to Plaintiff and the Company's other public shareholders.

63. The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to fully informed corporate suffrage—the harm suffered is an individual and irreparable harm.

64.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages

C.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

//


//


//

| | |
|---|---|
| Dated: December 23, 2020 | **MONTEVERDE & ASSOCIATES PC** |
| | By: */s/ Juan E. Monteverde* |
| | Juan E. Monteverde (JM-8169) |
| | The Empire State Building |
| | 350 Fifth Avenue, Suite 4405 |
| | New York, NY 10118 |
| | Tel: (212) 971-1341 |
| | Fax: (212) 202-7880 |
| | Email: jmonteverde@monteverdelaw.com |
| | *Attorneys for Plaintiff* |